**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| THE ESTATE OF RAFAEL LEAVITT-REY, | |
| **Plaintiff,** | |
| vs. | CIVIL NO: 16-2769 (RAM) |
| SAMUEL MARRERO-GONZALEZ ET AL., | |
| **Defendants.** | |

**AMENDED OPINION AND ORDER
(NUNC PRO TUNC)**

Pending before the Court is the Estate of Rafael "Raphy" Leavitt Rey's ("Plaintiff" or the "Estate") *Motion And Memorandum for Default Judgment And Award of Damages Against SMYSO, Inc. And Centro Cultural de Corozal, Inc.* ("*Motion*"). (Docket No. 548). Co-defendants SMYSO, Inc., d/b/a Sammy Marrero y su Orquesta, ("SMYSO") and Centro Cultural de Corozal, Inc. ("CCC") have yet to respond to the pending motion. Pursuant to the below findings of fact and conclusions of law, Plaintiff's *Motion* is **GRANTED**.

**I.   BACKGROUND**

On October 4, 2016, Plaintiff filed suit against twelve (12) musicians, their spouses, and the conjugal partnership between them, when applicable ("Defendant musicians") ("*Complaint*"). (Docket No. 1 ¶¶ 12-22). SMYSO and CCC, among other additional co-defendants, were also included in the *Complaint*. Id. ¶¶ 23 and 25. All Defendants were accused of "jointly and severally, willfully

and without authorization from Plaintiff, directly and/or contributory infringed the rights of Plaintiff by, at least, publicly performing the copyrighted works without permission from Plaintiff." Id. ¶ 29. Defendants were accused of direct copyright infringement under the Copyright Act and under the Puerto Rico Moral Rights Act for five (5) of the Estate's songs. Id. ¶¶ 56-115. Certain co-defendants such as CCC were also accused of contributory infringement. Id. ¶¶ 116-139. Finally, the Estate sought a preliminary injunction to enjoin all Defendants from continued violations of their rights. Id. ¶¶ 140-144.

The *Complaint* avers SMYSO is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico and which can be served through its resident agent José Armando López-Haddock ("López"). Id. ¶ 23. López, a co-defendant musician, is a trumpet player and band manager for the musical group *Sammy Marrero y su Orquesta*, or "Sammy Marrero and his Orchestra" ("Orchestra") in English. Id. ¶¶ 5, 19. SMYSO is led by Sammy Marrero ("Marrero") and is composed of at least the Defendant musicians. Id. ¶ 23. Marrero, also a musician co-defendant, is the Orchestra's lead vocalist. Id. ¶ 12. Further, SMYSO has two officers, López and Edgard Nevárez-Hernández ("Nevárez"). (Docket No. 648-2 at 14). Nevárez is SMYSO's president and secretary and is responsible for SMYSO's musical direction, whereas López is the vice-president and treasurer and oversees SMYSO's administration. Id. at 14-15, 23.

Nevárez, a co-defendant musician, is as a trumpet player and the Orchestra's arranger and music director. (Docket No. 1 ¶ 18).

On the other hand, the *Complaint* identifies CCC as a non-for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. Id. ¶ 25. And as a "promoter of at least one event where the Defendants infringed on Plaintiff's copyrights[.]" Id.

The *Complaint* was amended on April 6, 2018. (Docket No. 160). The claims, issues and facts of both complaints are identical. Id. The only changes are the inclusion of spouses' names, when applicable, and a jury trial demand. Id. The request for jury trial was subsequently denied by this Court. (Docket No. 413).

On April 30, 2018, default was entered upon CCC for "having failed to file an answer or pleading within fourteen (14) days of the Court's Order on October 27, 2017 denying defendant SMYSO's Motion to Dismiss for Failure to State a Claim." (Docket Nos. 106, 162 and 165).

On October 3, 2018, SMYSO's attorney filed a *Motion to Withdraw*, which was granted by the previous Judge assigned to this case. (Docket Nos. 181 and 186). The Court ordered that SMYSO's new counsel enter an appearance in the case by **September 24, 2018**. (Docket No. 186). To date, no new counsel for SMYSO has appeared on the record.

On November 2018, Plaintiff informed that SMYSO had filed a Chapter 11 Voluntary Petition for Bankruptcy in the Bankruptcy

Court for the District of Puerto Rico, automatically staying this case as to SMYSO. (Docket No. 275). On December 27, 2018, the Bankruptcy Court granted relief from the stay and allowed this suit against SMYSO to continue with "the sole limitation that [Plaintiff] cannot pursue a collection of judgment until the bankruptcy process provides otherwise." (Docket Nos. 313 ¶ 5 and 313-4).

The case at bar was transferred to the undersigned on June 20, 2019. (Docket No. 375). On August 3, 2020, SMYSO was ordered to show cause why default should not be entered against it for failure "to defend the lawsuit since the stay was lifted" and for failure "to participate in the preparation of the proposed pretrial order." (Docket No. 527). Even though the Order to show cause was served by mail to SMYSO's at the address listed in the records of the Puerto Rico Department of State's Registry of Corporations, **SMYSO did not respond**. Thus, default was entered against SMYSO on August 12, 2020. (Docket Nos. 535 and 536).

On August 27, 2020, the Court issued an *Amended Partial Final Judgment* whereby it disposed the claims against the Defendant musicians, including Nevárez, López and Marrero. (Docket No. 544). It also incorporates by reference and enforces all the stipulations set forth in the *Joint Motion Regarding Stipulation of Judgment and Request for Entry of Judgment in Favor of the Estate of Rafael Leavitt Rey*. Id. at 4. The Court ordered and adjudged that the

Defendant musicians were jointly and severally liable to the Estate in the amount of fifty thousand dollars ($50,000). Id. at 2.

On September 11, 2020, Plaintiff filed the pending *Motion*. (Docket No. 458). On September 25, 2020, Defendant musicians filed an opposition to the *Motion* ("*Opposition*") and on October 6, 2020, the Estate replied ("*Reply*"). (Docket Nos. 549 and 552).

## II.  FINDINGS OF FACT

To make findings of fact, the Court has taken as true the well-plead allegations of the *Complaint*,[1] the *Amended Complaint*, and the documents attached to said complaints and to the pending *Motion*. (Dockets Nos. 1 to 1-10; 160 to 160-11 and 548 to 548-21). Having reviewed said allegations and documents, the Court enters the following findings of fact:[2]

1.  The Estate is the sole and rightful owner of all rights, titles, and interests in and to the Copyrighted Works which include the following musical and performance works:

    a. *El Buen Pastor,*

    b. *Amor y Paz,*

    c. *Difícil de Olvidar,*

    d. *La Cuna Blanca,* and

---

[1] Given that CCC was found in default of the original *Complaint,* the Court will only consider the allegations set forth against CCC in said *Complaint. See e.g.*, Atlanta Gas Light Co. v. Semaphore Advert., Inc., 747 F. Supp. 715, 719 (S.D. Ga. 1990) (holding that defendant's "default as to plaintiff's original complaint cannot be stretched to cover plaintiff's amended complaint.").

[2] Reference to a Finding of Fact shall be cited as follows: (Fact ¶ _).

    e. *Jíbaro Soy*

(the "Copyrighted Works"). (Docket No. 160-1 ¶¶ 32, 43).

2. The Copyrighted Works are duly registered in the United States Copyright Office and in the Puerto Rico Intellectual Property Office. Id. ¶¶ 32-43.

3. Prior to the filing of the *Complaint*, SMYSO and its musicians publicly performed the Copyrighted Works, without license or authorization, in at least the following venues:

    a. Viera Discos on March 14, 2016;

    b. Municipality of Caguas on May 20, 2016;

    c. Municipality of Arroyo on August 12, 2016;

    d. Municipality of Hormigueros on September 3, 2016;

    e. Municipality of Corozal on October 1, 2016; and

    f. Municipality of Utuado on October 2, 2016

(Docket No. 160-1 ¶¶ 40, 48; 548-1; 548-2 at 57).

4. The Estate sent SMYSO three (3) cease and desist letters requesting that SMYSO refrain from continuing to infringe the Estate's rights in the Copyrighted Works on the following dates: (1) March 21, 2016; (2) March 30, 2016, and (3) July 13, 2016. (Docket No. 160-1 ¶ 45; 548-2 at 126-127; 548-16).

5. Following the filing of the *Complaint*, SMYSO continued to publicly perform unauthorized derivative works of the Copyrighted Works in the following venues and dates:

a. Municipality of Carolina on December 28, 2016

b. Municipality of Coamo on January 27, 2017

c. Municipality of Cayey on April 28, 2017

d. Municipality of Villalba on July 14, 2017

e. State of New Jersey on August 12, 2017

f. Los Niños Celebran San Sebastian at the Botanical Gardens
   in Río Piedras, San Juan on January 20, 2018

g. Ft. Lauderdale, Florida on March 3, 2018

h. Latin Roots in San Juan on June 16, 2018

i. Ft. Buchanan in San Juan on July 29, 2018

(Docket No. 548-1; 548-3)

6.  CCC was the promoter of the National Plantain Festival (the "Festival") of the Municipality of Corozal, thereby facilitating, promoting and enabling SMYSO to infringe on the Estate's rights. (Docket No. 1 ¶ 51).

7.  As the promoter, CCC organized the Festival, including booking the talent and staging the concert. Id. ¶ 128.

8.  CCC did not have a license nor authorization from either the Estate or ASCAP allowing public performances of any of the Copyrighted Works at the Festival of the Municipality of Corozal on October 1, 2016. Id. ¶ 129.

9.  As the promoter of the Festival, CCC directly and economically benefited from SMYSO's infringing actions. Id. ¶¶ 128-130.

10. SMYSO, without authority or license, publicly performed, reproduced, distributed, and created derivative works of the Copyrighted Works. <u>(Docket No. 160-1</u> ¶¶ 29, 56-85).

11. SMYSO tarnished the Copyrighted Works and publicly performed and adapted the same without showing the proper attribution. <u>Id.</u> ¶¶ 29, 86-115.

12. SMYSO's compensation per event was:

   a. Municipality of Caguas on May 20, 2016 – four thousand fifty dollars ($4,050)

   b. Municipality of Hormigueros on September 3, 2016 – five thousand dollars ($5,000)

   c. Municipality of Corozal on October 1, 2016 – five thousand five hundred dollars ($5,500)

   d. Municipality of Utuado on October 2, 2016 – five thousand five hundred dollars ($5,500)

   e. Municipality of Coamo on January 27, 2017 – four thousand five hundred dollars ($4,500)

   f. Municipality of Cayey on April 28, 2017 – four thousand five hundred dollars ($4,500)

   g. Municipality of Villalba on July 14, 2017 – three thousand six hundred thirty-five dollars ($3,635)

   h. State of New Jersey on August 12, 2017 – seven thousand dollars ($7,000)

   i. "Los Niños Celebran San Sebastián" at the Botanical

Gardens in Río Piedras, San Juan on January 20, 2018 – four thousand dollars ($4,000)

j. Fort Lauderale, Florida on March 3, 2018 – ten thousand dollars ($10,000)

k. Municipality of Barranquitas on April 27, 2018 – four thousand dollars ($4,000)

(Docket Nos. 548-2 at 50; 548-4 to 548-14).

### III. LEGAL STANDARD

**A. Default Judgment under Fed. R. Civ. P. 55**

Per Federal Rule of Civil Procedure 55(b), a party must "apply to the Court for a default judgment in cases where default has been entered against the defendant, but the amount of damages is not a sum certain." Puerto Rico Tel. Co. v. Ayala Rivera, 2018 WL 1705301, at *2 (D.P.R. 2018) (quotation omitted). Thus, a default judgment "is a 'final disposition of the case and an appealable order' that has the same effect as a judgment rendered after a trial on the merits." Grajales v. Puerto Rico Ports Auth., 2016 WL 9458792, at *2 (D.P.R. 2016) (quotation omitted). After a default entry, a court may examine a complaint "to determine whether it alleges a cause of action. In making that determination **it must assume that all well pleaded factual allegations are true**." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (citations omitted) (emphasis added). See also Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999).

An entry of default does not automatically entitle a plaintiff to damages. *See* <u>Scalia v. Evolution Quality Guard, Inc.</u>, 2020 WL 1492782, at \*5 (D.P.R. 2020) (citation omitted). Instead, Fed. R. Civ. P. 55(b) states that when entering a default judgment:

> The court may conduct hearings or make referrals —preserving any federal statutory right to a jury trial— when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

While the Court *can* hold a hearing, it is **not obligated to do so if there is basis for the damages awarded in the default judgment**. *See* <u>In re The Home Restaurants, Inc.</u>, 285 F. 3d 111, 114 (1st Cir. 2002) (holding that a court has discretion to order a default judgment without a hearing if "the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object"). A hearing is unnecessary when "arriving at the judgment amount involves nothing more than arithmetic — the making of computations which may be figured from the record." *See* <u>HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.</u>, 847 F.2d 908, 919 (1st Cir. 1988) (finding no abuse of discretion where the amount of damages was calculated from mortgage and loan agreements, certifications, and other documents). Instead, the court "may rely on detailed

affidavits or documentary evidence" to determine the amount of damages. *See* <u>Scalia</u>, 2020 WL 1492782, at *6 (holding unnecessary a damages hearing because wages object of the suit could be calculated via a sworn statement which included reports of the methodology used to calculate damages); *see also* <u>Auctus Fund, LLC v. ERHC Energy, Inc.</u>, 2019 WL 1316749, at *3 (D. Mass. 2019); <u>Formatech, Inc.</u>, 2019 WL 7165930, at *8 (B.A.P. 1st Cir. 2019).

### III. CONCLUSIONS OF LAW

#### A. Copyright Infringement and Statutory Damages

According to Section 106 of the Copyright Act, an owner of a valid copyright retains the **exclusive** right to reproduce the copyrighted work, prepare derivative works of the same, distribute copies of the copyrighted work to the public, and perform the copyrighted work publicly, among other rights. *See* 17 U.S.C. § 106. To state a valid claim for direct copyright infringement, a plaintiff must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Bosh v. Banco Popular de Puerto Rico, Inc.</u>, 2016 WL 7665774, at *2 (D.P.R. 2016) (quoting <u>Johnson v. Gordon</u>, 409 F.3d 12, 17 (1st Cir. 2005)). The second element requires a plaintiff to establish that the alleged use of the copyrighted work was "so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" <u>Pina v. Rivera</u>, 2014 WL 12749230, at * 3 (D.P.R. 2014), <u>report and recommendation</u>

adopted, (D.P.R. April 2, 2014) (quoting Airframe Sys., Inc. v. L-3 Comms. Corp., 658 F.3d 100, 105-06 (1st Cir. 2011)).

Per the *Amended Complaint*, Plaintiff is the copyright owner of the Copyrighted Works according to Certificates of Registration issued by the United States Copyright Office and the Certification of Positive Inscription in the Puerto Rico State Department. (Fact ¶ 2; Docket Nos. 160-3 to 160-10). SMYSO, and as facilitated by CCC on one occasion, publicly performed the Copyrighted Works without authorization. (Facts ¶¶ 3, 5 and 8). Further, SMYSO performed unauthorized and distorted versions of the Copyrighted Works. (Facts ¶¶ 5, 10 and 11; Docket No. 160-1 ¶¶ 88, 94, 100, 106, 112). On its face, the *Complaint* and the *Amended Complaint* adequately allege a copyright infringement claim.

In a copyright infringement case, a copyright owner may elect to recover statutory damages instead of actual damages and any additional profits. *See* 17 U.S.C. § 504. Here, there is no doubt that Plaintiff requested statutory damages. (Docket Nos. 1 at 29; 160—1 at 29). The First Circuit has explained that the amount of statutory damages a plaintiff may recover "depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works." Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 194 (1st Cir. 2004) (emphasis in original).

The Copyright Act provides the Court with discretion to set a range of statutory damages between seven hundred fifty dollars ($750) to thirty thousand dollars ($30,000) per infringed work. *See* 17 U.S.C. § 504(c)(1). But, if the infringer's actions are found to be "willful," the range may increase up to one hundred fifty thousand dollars ($150,000) per work. Id. § 504(c)(2). An infringement is willful if the plaintiff can prove that the defendant committed the infringing action "knowing" that their actions could be copyright infringement. *See* Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 507 (1st Cir. 2011). Thus, "statutory damages are intended to deter infringement generally and in particular willful infringement." Bebe Studio, Inc. v. Zakkos, 2010 WL 3419978, at *2 (D.P.R. 2010) (citation omitted).

Typically, a corporation can act only through its agents. *See* Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014)(citing 1 W. Fletcher, Cyclopedia of the Law of Corporations § 30, p. 30 (Supp.2012-2013) ("A corporation is a distinct legal entity that can act only through its agents.")). The First Circuit has also repeated as a "fundamental premise" that "while a corporation does have a noncorporeal and independent existence, it conducts its affairs *only through its officers and employees*." Stop & Shop Companies, Inc. v. Federal Ins. Co., 136 F.3d 71, 74 (1st Cir. 1998)) (emphasis added). Further, in claims of direct copyright infringement, such as here, "corporate officers can be held liable

for a corporation's infringing activity." <u>43 N. Broadway LLC v.</u>
<u>Essential Media Grp. LLC</u>, 2018 WL 2864014, at *2 (S.D. Fla. 2018).

In the pending *Motion*, the Estate avers it is entitled to
statutory damages at the top of the statutory limit given that
SMYSO, via its officers Nevárez and López, willfully disregarded
the Estate's rights over the Copyrighted Works. (Docket No. 548 at
5 n. 1, 18). Plaintiff included alongside the pending *Motion*
several pages of López's deposition wherein he admitted to
receiving two of the cease and desist letters sent to SMYSO.
(Docket No. 548-2 at 41-43). Yet SMYSO continued to perform all
the Copyrighted Works in different venues until 2018. (Facts ¶¶ 3
and 5). This because, per López's deposition, the officers thought
the musicians were not responsible for getting the ASCAP license
authorizing them to play the Estate's songs. (Docket No. 548-2 at
43-44, 46-48). The Estate also attached to their *Motion* parts of
a transcript from Nevárez's interview where he acknowledged how he
altered the original arrangements of the Copyrighted Works.
(Docket No. 548-23 at 4-5). Hence, Nevárez and López, as SMYSO's
agents, were purportedly the moving forces behind SMYSO's willful
infringement of the Estate's rights over the Copyrighted Works.
Plaintiff therefore alleges it is entitled to one hundred and fifty
thousand dollars ($150,000) per infringed work, or seven hundred
fifty thousand dollars ($750,0000) in damages. <u>Id.</u> at 12.

While the Court is aware that it must accept the well-pled and uncontroverted allegations set forth in the *Amended Complaint*, willful infringement **cannot** be imputed to SMYSO. In the *Joint Motion Regarding Stipulation of Judgment and Request for an Entry of Judgment in Favor of the Estate of Rafael Levitt Rey*, Plaintiff and the Defendant Musicians stipulated and requested that the Court: (a) enter judgment against the Defendant Musicians for copyright infringement; and (b) do not enter a finding of willfulness against the Defendant Musicians. (Docket No. 532 at 2-3). Thus, the Court specifically stated in the *Amended Partial Final Judgment* that it made "**no finding of willfulness** by the Musicians[,]" including López, Nevárez and Marrero. (Docket No. 544 at 2) (emphasis added). This finding, or lack thereof, precludes a potential finding of willfulness that may attach to the musicians and officers of SMYSO, Nevárez and López, and by extension to SMYSO itself. It likewise binds SMYSO's leader, Marrero. (Docket No. 160-1 ¶ 23).

Defendant Musicians espouse a similar argument in their *Response*. (Docket No. 549 at 3). Plaintiff's *Reply* however states that such a conclusion is improper given that SMYSO and the musicians are separate defendants. (Docket No. 552 at 6). The Estate claims that such a conclusion is uncalled for because SMYSO, through López, admitted "**in his official capacity as an officer of this entity**" that he received the cease and desist letters. Id.

(emphasis in original). Lastly, the Estate avers its "evidence as to SMYSO's acts is undoubtedly intertwined with the actions made by its officers, [López] Haddock and Nevárez." Id.

Yet, the Court cannot simply separate López and Nevarez's personal capacity, as Defendant Musicians against whom Plaintiff agreed the Court could not find willfulness, and their official capacities, as officers of SMYSO. There is no evidence on the record that their activities as musicians performing the Copyrighted Works were separate from their activities as agents of SMYSO. Instead, the *Amended Complaint* sought to impose responsibility upon SMYSO based on the Defendant Musicians' performances of the Copyrighted Works. (Facts ¶¶ 3, 5, 10-11. Thus, although there was infringement, because SMYSO's officers and agents cannot be found to have acted willfully, neither can SMYSO. As noted earlier, a corporation can only act through its agents which in SMYSO's case happen to be the Defendant Musicians as to whom the Court is precluded from finding willfulness due to the stipulation plaintiff subscribed.

The record shows that SMYSO performed the Copyrighted Works in the Municipality of Corozal on October 1, 2016 at a concert organized by CCC. (Facts ¶ 3 and 8; Docket No. 548-6). Per the original *Complaint*, CCC is accused of direct infringement and contributory infringement. (Docket No. 1 ¶¶ 57-86, 125-132). A defendant may "be found liable for copyright infringement on a

direct or secondary theory of liability." <u>Berio-Ramos v. Flores-García</u>, 2020 WL 2788504, at *13 (D.P.R. 2020) (citing <u>Ortiz-González v. Fonovista</u>, 277 F.3d 59, 62 (1st Cir. 2002)). Under the secondary theory of liability, the United States Supreme Court has stated that a defendant who fails to personally "violate a copyright may be liable for acts of infringement by third parties when it **'infringes contributorily by intentionally inducing or encouraging direct infringement'** or **'infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'"** <u>e-Steps, LLC v. Americas Leading Fin., LLC</u>, 2019 WL 9834429, at *2 (D.P.R. 2019) (<u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005))(emphasis added). "Although the defendant must have knowledge of the infringing activity, 'the defendant need only have known of the direct infringer's activities, and need not have reached the legal conclusion that those activities infringed a copyrighted work.'" <u>Montalvo v. LT's Benjamin Records, Inc.</u>, 56 F. Supp.3d 121, 134 (D.P.R. 2014) (quoting *Jalbert v. Grautski,* 554 F.Supp.2d 57, 68 (D. Mass. 2008). Taking the well-pled allegations in original *Complaint* and in the pending *Motion* as true, CCC is liable for direct and contributory infringement of the Estate's rights over the Copyrighted works. (Facts ¶¶ 6-9, 12; Docket Nos. 106, 162 and 165). Per the *Complaint*, CCC hired SMYSO to perform at the Festival without a license or authorization to have public performers

perform any of the Copyrighted Works. (Facts ¶¶ 7-8). Therefore, CCC facilitated that SMYSO, via its musicians, infringe on the Estate's rights. (Fact ¶ 6). *See e.g.*, Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 194 (S.D.N.Y. 2016) (quoting Shapiro, Bernstein & Co., H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)) ("[P]proprietors are liable for the infringements of performers within their establishment, 'whether the [performer] is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.'"). Again, given that the direct infringers are the musicians, who this Court already made no finding of willfulness, CCC cannot be found willful either. (Docket No. 544 at 2). Thus, CCC is liable for the infringement that occurred at the Festival, albeit not for willful infringement.

The Court now turns to the amount of statutory damages that may be awarded to Plaintiff. Typically, "although the plaintiff requesting statutory damages does not have to prove its own actual damages or the amount the infringer profited from his conduct, courts have considered these amounts when awarding statutory damages." Pina, 2014 WL 12749230, at * 3 (citation omitted). A court may also consider "factors such as 'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of

the defendant's conduct,' and the state of mind of the infringers." Curet-Velazquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 58 (1st Cir. 2011) (quotation omitted). Here, the only evidence provided by Plaintiff related to lost profits from SMYSO's performance of the Copyrighted Works is SMYSO's compensation for eleven performances between May 2016 to April 2018. (Fact ¶ 12). The compensation amounts to fifty-seven thousand six hundred eighty-five dollars ($57,685). Id. In another section of its *Motion*, the Estate avers that the total sum of the performance profits really amounts to seventy-seven thousand six hundred eighty-five dollars ($77,685). (Docket No. 548 at 15-16). But this amount includes four (4) performances for which Plaintiff has not provided supporting evidence. Id. Thus, Plaintiff only evinced $57,685 in performance profits. (Fact ¶ 12).

Similarly, Plaintiff has failed to include a set list of the songs performed at each show. Meanwhile, López's deposition supports a finding that other songs were played in *addition* to the Copyrighted Works. The deposition states, to counsel's question regarding which songs were played at the March 20, 2016 performance in Caguas that "**there is no way of knowing. The five songs there are [sic], but there were other songs**." (Docket No. 548-2 at 47). López also answered affirmatively that all five songs were played at subsequent performances in Hormigueros, Corozal, Utuado, Carolina, Coamo, Cayey, Villalba, New Jersey, Río Piedras and Ft.

Lauderdale. _Id._ at 47-48. Hence, the profits that SMYSO derived from each performance include not just the five songs object of this suit, but other songs which the Court is not privy to. The Court is also unaware of _how many songs_ were played at each show. Thus, the Court cannot calculate how much profit the Estate lost from each infringed work. _Cf._ Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir. 1985) (finding that defendant's use of five of plaintiff's copyrighted songs in a musical revue, which consisted of 6 minutes of a 100-minute show, entitled plaintiff to recover a share of the profits from the revue but that the award of $22,000 out of $2,500,000 in profits was "grossly inadequate"); Caffey v. Cook, 409 F.Supp.2d 484, 501-02, 509 (S.D.N.Y. 2006) (finding that defendants infringed plaintiff's copyright through live performances, and that a third of the shares of the net profits from concert revenues were attributable to the copyrighted element of the show); Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 456 F. Supp. 531, 538 (S.D.N.Y. 1977) (awarding half of the profits of a "complete works" album even though the infringing song was only one-tenth of the set).

The Court finds that SMYSO and CCC committed either direct or contributory copyright infringement. Hence, Plaintiff is awarded thirty thousand dollars ($30,000) per infringed work under the Copyright Act. The District Court of Puerto Rico's opinion in Pina v. Rivera is instructive. _See e.g._, Pina, 2014 WL 12749230, at *3.

In <u>Pina</u>, the Court held that expected album sale profits of $500,000, but which included profits from songs unrelated to the copyright infringement, were insufficient evidence of lost profits. <u>Id.</u> at *4. The Court also held therein that plaintiff failed to present evidence of profits that accrued to defendants from their infringement. <u>Id.</u> But, considering the number of online views and downloads of the infringed works, the Court awarded $30,000 in statutory damages for each of the three infringed songs. <u>Id.</u> Here, co-defendants SMYSO and CCC will be held **jointly and severally liable for $150,000 in statutory damages.** This amount, which is almost *two and a half times* the amount that Plaintiff showed they lost in profits over eleven performances, is warranted to deter future infringing conduct. (Fact ¶ 12).

### B. Moral Rights Act and Statutory Damages

According to the *Complaint* and the *Amended Complaint*, the Estate also seeks statutory damages for the Copyrighted Works pursuant to the Puerto Rico Moral Rights Act ("Moral Rights Act"), P.R. Laws Ann. tit. 31 §§ 1401j-1401ff. (Docket Nos. 1 ¶¶ 87-116; Docket No. 160-1 ¶¶ 86-115). Said statute "grants an author of an original work the exclusive rights of attribution, withdrawal, integrity, and access." <u>Berio-Ramos</u>, 2020 WL 2788504, at *12 (citing P.R. Laws Ann. tit. 31 §§ 1401j(b)). This also "includes the right to prevent the alteration, truncation, and distortion of the work." <u>Ferrer v. Mun. Gov't of Lajas</u>, 2014 WL 12686916, at *3

(D.P.R. 2014) (quoting Venegas Hernández v. Peer Intern. Corp.,
270 F.Supp.2d 207, 213 (D.P.R. 2003)) (quotation marks omitted)).
A violation of moral rights under the act "empowers the author or
rightful claimant to seek temporary or permanent injunction to
assert his rights, redress for damages and financial
compensation." Id. (official translation at 160-2 at 9).
Therefore, unlike the Copyright Act which only provides economic
damages, the Moral Rights Act **also provides recovery for mental
suffering**. *See* Berio-Ramos, 2020 WL 2788504, at *12. *See also*
Torres-Negrón v. Rivera, 413 F.Supp.2d 84, 85-87 (D.P.R. 2006)
(discussing moral right under predecessor statute, Puerto Rico's
Intellectual Property Act, Law No. 96 of July 15, 1988, as amended,
which also protects "against harm to an author's dignity and person
that ensues from an infringement of an author's work.").

The statute provides the Court with discretion to set a range
of statutory damages between seven hundred fifty dollars ($750) to
twenty thousand dollars ($20,000) per infringed registered work.
*See* P.R. Laws Ann. tit. 31 §§ 1401s. Here, there is no doubt that
the Copyrighted Works were registered. (Fact ¶ 2). In the pending
*Motion*, the Estate claims that co-defendants SMYSO and CCC's joint
liability for the infringement of the Estate's rights over the
Copyrighted Works means that they are also subject to statutory
damages per the Moral Rights Act. (Docket No. 548 at 16-19).
Plaintiff also cites several Puerto Rico state court opinions which

explain that calculating moral damages is a difficult endeavor. Id. at 17. Further, the Puerto Rico Supreme Court has explained that the measure of damages for a violation of a party's moral rights "is the spiritual and social damage sustained, paying heed to the fact that the author's moral rights may vanish if the sanctions imposed are not sufficient." Ferrer, 2014 WL 12686916, at *3 (quoting Pancorbo v. Wometco de P.R., Inc., 15 P.R. Offic. Trans. 650, 659 (1984)). The Puerto Rico District Court also held under the Moral Right Act's predecessor that "[g]iven the nature of the law protecting an author's moral rights to his work, an evaluation necessarily involves an element of subjectivity." Id. at *3.

The Estate therefore claims that SMYSO's "careless disregard of the Estate's moral rights of attribution and integrity over the Copyright Works deserves no less than the maximum award [$20,000 per infringed work] of statutory damages under the Moral Rights Act." (Docket No. 548 at 17). This because, due to an entry of default, it is admitted that SMYSO "tarnished" the Copyrighted Works, and publicly performed the works and adapted versions of them without attribution. Id. The Estate attached SMYSO's adapted versions of the Copyrighted Works to its Motion, as well as parts of a transcript from an interview by Nevárez where he explained how he altered the song's original arrangements. (Docket Nos. 548-22 and 548-23 at 4-5). Plaintiff alleges that "[t]his intentional

deformation of the Copyrighted Works was carried-out to alienate the author, Raphy Leavitt, from his work, so that SMYSO could become in the public perception the owners or creators of the Copyrighted Works." (Docket No. 548 at 18). Thus, Plaintiff claims that the willful violation of its rights of attribution and integrity over the Copyrighted Works warrants one hundred thousand dollars ($100,000) in moral damages.

However, the Court finds that it is precluded from a potential finding of willfulness that may attach to SMYSO and CCC warranting moral damages at the top of the statutory range. Further, Plaintiff did not provide any evidence showing how the value of the Copyrighted Works was affected by SMYSO's actions or how the late Mr. Raphael Leavitt Rey's dignity was harmed. Nor did they provide any evidence of the "the spiritual and social damage" sustained by the Estate as a result of SMYSO and CCC's actions. *Cf.* Ferrer, 2014 WL 12686916, at *3 (holding that plaintiff was entitled to $73,000 in moral damages as based on the reinstallation costs used as a proxy for calculating plaintiff's moral damages and because "[t]he manner in which the sculptures were uprooted from the ground" without notice to the artist or the Instituto de Cultura Puertorriqueña and "were carelessly abandoned in a parking lot demonstrates a high degree of ingratitude and disrespect for the integrity of the artist's work."). Considering that Plaintiff proffered evidence that SMYSO, via Nevárez, altered the

arrangements of the Copyrighted Works, the Court believes that moral damages in the amount of ten thousand dollars ($10,000) per infringed work is appropriate. The Estate is hence entitled to **fifty thousand dollars ($50,000)** in moral damages.

### C. Injunction

According to Section 502 of the Copyright Act, an owner of a valid copyright is entitled to injunctive relief. *See* 17 U.S.C. § 502. Specifically, the statute states that "[a]ny court having jurisdiction of a civil action arising under this title may […] grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.A. § 502(a). "If liability is established and a continuing threat to the copyright exists, courts have usually granted permanent injunctions." EMI Mills Music, Inc. v. Empress Hotel, Inc., 470 F. Supp. 2d 67, 74 (quoting Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F.Supp. 511, 516 (D.P.R. 1993)).

Here, SMYSO continued to perform the Estate's Copyrighted Works without authorization or license to do so and once in conjunction with CCC even after it received the cease and desist letters and two years into this case's litigation. (Facts ¶¶ 3-5, 8 and 10). There *is* a continued threat to the copyright. Given co-defendant SMYSO and CCC's infringement of the Estate's rights over the Copyrighted Works and of the possibility that additional infringements by SMYSO and CCC *might* take place, the Court finds

that SMYSO and CCC, their agents, servants, employees, successors,
licensees, officers, partners, assigns, parent corporations,
attorneys and any person with each or any of them are hereby
**permanently enjoined from infringing "any of the exclusive rights**
**belonging to Plaintiff over the Copyrighted Works, including but**
**not limited to publicly performing, reproducing, adapting, and**
**distributing any and all of the Copyrighted Works**, and any other
work to which Plaintiff has exclusive ownership to." (Docket Nos.
1 ¶¶ 141-145; 160-1 ¶¶ 140-144). *See* <u>Banco Popular De Puerto Rico</u>
<u>v. Asociación De Compositores Y Editores De Música Latinoamericana</u>
<u>(ACEMLA)</u>, 678 F.3d 102, 114 (1st Cir. 2012) (upholding district
court's decision to permanently enjoin Banco Popular de Puerto
Rico "from performing, producing, selling, and/or distributing the
1999 Christmas concert.")

**V. ORDER**

For the foregoing reasons, the Estate of Rafael "Raphy"
Leavitt Rey's *Motion And Memorandum for Default Judgment And Award*
*of Damages Against SMYSO, Inc. And Centro Cultural de Corozal, Inc.*
is **GRANTED.** The Court awards the Estate damages against SMYSO,
Inc. and Centro Cultural de Corozal, Inc. as follows:

    A. <u>**$150,000.00**</u> in damages for violations to the Copyright Act;

    B. <u>**$50,000.00**</u> in damages for violations to the Puerto Rico
       Moral Rights Act.

Lastly, and pursuant to Section 502 of the Copyright Act, the Court issues a permanent injunction against SMYSO, Inc. and Centro Cultural de Corozal Inc., their officers, agents, servants, employees, and any persons in active concert or participation with them and **permanently enjoins them** from **publicly performing, reproducing, distributing and / or making derivative works** of *La Cuna Blanca*, *Amor y Paz*, *Dificíl de Olvidar*, *El Buen Pastor*, and *Jíbaro Soy.*

Per Fed. R. Civ. P. 54(d) costs are awarded to Plaintiff.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 30th day of October 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge